IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST NONPROFIT INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 05 C 7164 ) |
| MIRALINK CORPORATION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff First Nonprofit Insurance Company brought this action against defendant MiraLink, alleging that defendant failed to provide it with an adequate disaster recovery computer system, and by doing so breached a contract and various warranties, committed common law and statutory fraud, and was unjustly enriched. Defendant now moves to dismiss Counts I through IV of the complaint. For the following reasons, that motion is denied.

Under Rule 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004). Whether the complaint survives a 12(b)(6) motion often depends on its ability to meet Rule 8 pleading standards. Lekas v. Briley, 405 F.3d 602, 606 (7th Cir. 2005). Rule 8(a) "requires only (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." McDonald v. Household Intern. Inc., 425 F.3d 424, 427 (7th Cir. 2005) (quoting Rule 8(a)). The notice pleading standard does not require that pleader set forth legal theories. McDonald, 425 F.3d

at 427; Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002) ("The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply."). The court accepts all well-pleaded allegations and draws all reasonable inferences in plaintiff's favor. Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 981 (7th Cir. 2004).

Sometime in 2003, plaintiff sought to obtain a disaster recovery computer system so that it could maintain business operations in the event of a disaster. Plaintiff was eventually led to defendant, who produces and sells recovery computer systems. After reading technical literature and marketing material, and then meeting with defendant's president and business development manager, plaintiff decided to acquire a system from defendant. Instead of contracting directly with defendant, plaintiff entered into a finance lease agreement with American Enterprise Leasing (AEL), a finance company. Plaintiff asserts that its agreement with AEL was written as a statutory finance lease pursuant to Article 2A of the Uniform Commercial Code (UCC). Plaintiff also claims that AEL contracted with MiraLink to purchase the system, and that AEL did so in order to lease the system to plaintiff. The system was delivered directly to plaintiff.

Plaintiff experienced a number of problems with defendant's system, one of the more serious issues being that the system was incompatible with plaintiff's operating system. After learning of these problems from plaintiff, defendant made various remedial efforts, including sending technical support engineers to plaintiff's offices. Defendant's engineers could not make the system operational, and plaintiff claims that the system presently does not boot up. Even though plaintiff is unable to use the system, it continues to make lease payments to AEL, pursuant to the lease agreement.

Counts I through IV each focus on the supply contract alleged to exist between defendant and AEL. Plaintiff claims that defendant breached warranties in the supply contract (Counts I through III), and also breached the contract (Count IV). With respect to the breach of contract claim, plaintiff asserts that it is a third-party beneficiary to the supply contract. Plaintiff does not present the supply contract to the court, and we gather that it does not possess a copy of this agreement.

Defendant's argument for dismissal is relatively straightforward. It contends that it did not have a written agreement with AEL, and that the non-existence of the supply contract precludes plaintiff's purported third-party beneficiary status and also warrants dismissal on statute of frauds grounds. According to defendant, the only written agreement in this case is the lease agreement between plaintiff and AEL. That lease agreement, defendant emphasizes, disclaims warranties, subjects disputes to arbitration, and vests title of the system with AEL.

Defendant summarizes the thrust of its argument when, in its reply, it states that plaintiff has "provided very little in the way of factual information to support any of their [sic] claims." However, factual support is not needed at this motion-to-dismiss stage. It is true that plaintiff cannot obtain recovery on contract theories when no contract exists between defendant and AEL, but, making all inferences in plaintiff's favor, it has alleged the existence of such a contract. *See* Verotix Systems, Inc. v. Ann Taylor, Inc., 2003 U.S. Dist. LEXIS 20354, 2003 WL 22682348, *5 (N.D. Ill. 2003).

We are not presented with any details of the contract's terms and conditions, but that is to be expected in light of the fact that plaintiff does not have the contract. Proof of the contract's existence is a matter for summary judgment or trial, and allegations of specific contract terms are not required at this stage. Wausau Tile, Inc. v. Navigators Ins. Co., 2006

U.S. Dist. LEXIS 4507, 2006 WL 278856, *2 (W.D. Wis. 2006) (citing <u>Bennett v. Schmidt</u>, 153 F.3d 516, 518-519 (7th Cir. 1998)). A contract arises whenever goods are purchased. This is the case for an apple bought at a fruit stand, or a computer system purchased by a financing company. The contract may be written, oral, or implied – but it is still an agreement. Moreover, courts have held that unilateral performance by one party provides strong evidence that a contract exists. *See* <u>Monetti S.P.A. v. Anchor Hocking Corp.</u>, 931 F.2d 1178, 1183 (7th Cir. 1991); <u>Meyer v. Logue</u>, 100 Ill. App. 3d 1039, 1045, 427 N.E.2d 1253, 56 Ill. Dec. 707 (Ill. App. 1st Dist. 1981). Typically, a party will cite its own unilateral performance as evidence of a written contract that obligated its counterpart's performance. <u>Do It Best Corp. v. Passport Software, Inc.</u>, 2005 U.S. Dist. LEXIS 7213, 2005 WL 743083, *11 (N.D. Ill. 2005). A party will also invoke the part performance doctrine to avoid application of the statute of frauds. <u>Carl A. Haas Auto Imports, Inc. v. Lola Cars Ltd.</u>, 933 F. Supp. 1381, 1388 (N.D. Ill. 1996). Defeating the statute of frauds does not establish the terms of the agreement. <u>Allied Wire Products, Inc. v. Marketing Techniques, Inc.</u>, 99 Ill. App. 3d 29, 37. 424 N.E.2d 1288, 54 Ill. Dec. 385 (Ill. App. 1st Dist. 1981). As noted below, much will depend on the precise terms of the supply contract, but the threshold issue of the contract's existence (which is the gist of defendant's challenge) does not depend on any specific terms. Defendant offers no reason why its delivery of the system should not yield an inference that AEL's purchase was pursuant to an agreement. Further, paragraph 5 of the lease agreement between plaintiff and AEL specifically mentions a contract related to the purchase of the system from the vendor, who in this case is defendant.

The existence of a supply contract means very little unless plaintiff is entitled to enforce its provisions. Defendant contends that courts are loathe to infer third-party beneficiary status

that is not expressly set forth in a writing. This is true, but it does not preclude plaintiff's claim, which is predicated on statutory third-party beneficiary status. Paragraph 5 of the lease agreement announces the parties' intent to qualify the lease agreement as a statutory finance lease under Article 2A of the UCC. Under UCC § 2A-209, which Illinois has adopted at 810 ILCS 5/2A-209(1), "[t]he benefit of a supplier's promises to the lessor under the supply contract... extends to the lessee." While there are no Illinois cases on this subject, we think that the statutory language is plain, and the position asserted by plaintiff is otherwise supported by authority. See 2 White & Summers, Uniform Commercial Code § 13-3 (4th ed.). Plaintiff has thus alleged the existence of a contract and the ability to enforce it.

Defendant next argues that due to the absence of a written contract, any oral or implied contract would violate the Statute of Frauds. Plaintiff ripostes that the supply contract may be written, and if it is not, then defendant's delivery of the system and plaintiff's receipt and acceptance render the Statute of Frauds inapplicable. The exceptions plaintiff identifies generally do take agreements out of the Statute of Frauds. See Chicago v. Reliable Truck Parts Co., 822 F. Supp. 1288, 1300 (N.D. Ill. 1993); Sjogren v. Maybrooks, Inc., 214 Ill. App. 3d 888, 892, 573 N.E.2d 1367, 158 Ill. Dec. 182 (Ill. App. 1st Dist. 1991); Meyer, 100 Ill. App. 3d at 1043-44. As noted above, a party usually cites these exceptions when he has fully performed or when the other party receives goods. Rarely will a party who receives goods argue that its acceptance evidences the existence of a contract that requires its payment. But by virtue of the lease agreement, this is not the usual situation, and defendant does not argue that the finance lease agreement renders the above-noted exceptions inoperable.[1]

---

[1] We do pause to note that avoidance of the Statute of Frauds would only get plaintiff so far. Under 810 ILCS 5/2A-209(1), plaintiff's rights depend on the terms of the supply contract. Paragraph 5 of the master lease agreement alludes to this when it states that plaintiff's rights stem from AEL's purchase

Lastly,[2] defendant seeks to benefit from various provisions in the finance lease agreement, such as the disclaimer of warranties and arbitration provision. However, defendant cannot point to any provision in the agreement that permits it to step into AEL's shoes and lay claim to those clauses; nor does it direct us to any statute that confers upon it beneficiary status. Defendant's position would create pronounced disincentives for agreements that use finance lease agreements to make large scale acquisitions. Hiding behind the lessor's shield also defeats underlying policies of lease agreements, including the buyer's reliance on the supplier, and not the lessor, as well as provisions that protect the lessee's interests, such as section 2A-209(3)-(4). In sum, without express indication to the contrary, the finance lease agreement protects the lessor and not the vendor.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 27, 2006.

---

contract, and that plaintiff should contact defendant "for a description of any such rights." *See also* First Fed. Fin. Serv. v. Derrington's Chevron, Inc., 230 Wis. 2d 553, 565 (Wis. Ct. App. 1999).

[2] In its reply, defendant argues that plaintiff's implied warranty claims (Counts I and II) fail to plead requisite elements. As this argument is raised for the first time in the reply, it is waived. *See* Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997); Luellen v. City of East Chicago, 350 F.3d 604, 612 n.4 (7th Cir. 2003).

## Camper Information *Please print.*

_____ ☐ M ☐ F

Address _____

City _____ State _____ Zip _____

Child's Birth Date _____ Age ____ Grade in Fall '06 ____

Allergies/Medications/Other Special Considerations _____

Parent or Guardian's Name _____

Phone (Day) _____ (Mobile) _____

Emergency Contact (in case you can't be reached)

Name _____ Relationship _____

Phone (Day) _____ (Mobile) _____

Physician's Name _____ Phone _____



## Sessions *Please indicate first and second choice.*

___ Session I: July 10–July 14   ___ Session III: July 24–July 28
___ Session II: July 17–July 21  ___ Session IV: July 31–August 4

## Register With a Friend



We receive many requests for campers to be placed in the same group as their friend(s) or relative(s). We will make every attempt to accommodate such requests, but only when the following requirements are met:

- Campers must select the same session of camp.
- Campers must be the same age and/or grade.
- For all parties requesting to be placed in the same group as a friend or relative, we recommend mailing registration forms together. Friend requests will only be accepted until May 13, 2006.

List the names of the children your camper would like to be placed with:

_____

## Billing Information *Please print.*

Name _____

_____

City _____ State _____ Zip _____

Phone (Day) _____ (Evening) _____

Please indicate membership affiliation.

I am a member of ___ Adler ___ Field ___ Shedd

Member ID# _____
*Member ID# is required to receive the member rate*

## Fees and Payment Options

Please check the appropriate box.

☐ $220 non-members   ☐ $200 members

Please check one box only.

☐ Check (made payable to Adler Planetarium)
☐ MasterCard  ☐ American Express  ☐ VISA  ☐ Discover

Total $ _____

Card # _____

Expiration Date _____ Security Code _____

Signature _____

## Cancellations and Refunds

To receive a 50% refund, we must receive your cancellation 30 days or more prior to the start date of your camp session. A refund of 50% will be given if cancellation is received 12 to 29 days prior to start date. Within two weeks of the start date, no refund will be given for cancellations.

## T-shirt size

*Please keep in mind:*

- Each camper is required to wear a camp t-shirt every day of camp.
- Every camper will receive a complimentary camp t-shirt the first day of camp.
- To purchase additional t-shirts, please include $10 per t-shirt with your payment for camp.

*Indicate quantity and t-shirt size below.*

Adult Sizes: ___ S  ___ M  ___ L  ___ XL  ___ XXL